UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY D. ROBINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>F/V LILLI ANN, LLC, *et al.*,<br><br>　　　　Defendants. | IN ADMIRALTY<br><br>Case No. C15-1086RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

　　　　This matter comes before the Court on defendants' motion for partial summary judgment. Dkt. # 13. In this case, plaintiff Jeffrey D. Robinson, a seaman, claims that his employer and the owner of the fishing vessel on which he worked breached their maritime duty to provide maintenance and cure by failing to take all reasonable steps to ensure that plaintiff received proper care and treatment for his severe sleep apnea. Defendants move for partial summary judgment on the standard of care applicable to a vessel owner's duty to provide maintenance and cure for a condition unrelated to employment on the vessel. Defendants further seek summary judgment as to whether, on the facts of this case, there was a breach of that duty. Dkt. # 13 at 1–2. Plaintiff opposes summary judgment. Dkt. # 15. Having reviewed the parties' briefs, declarations, exhibits, and the remainder of the record, the Court GRANTS in part and DENIES in part defendants' motion for the reasons that follow.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

**BACKGROUND**

This case arises out of a stroke that plaintiff suffered in July 2012 while employed by defendant Coastal Villages Longline, LLC, as a crew member of the F/V Lilli Ann, a vessel owned and operated by defendant F/V Lilli Ann, LLC.

In early 2012, Bob Wilson, the captain of the F/V Lilli Ann, advised plaintiff to see a doctor about his serious snoring problem. Dkt. # 16-1 at 4. Captain Wilson was aware that snoring could be associated with severe health problems. Dkt. # 16-2 at 8–9. On several occasions prior to this conversation, Captain Wilson and plaintiff had discussed plaintiff's snoring, and Captain Wilson had suggested that plaintiff consider getting a Continuous Positive Airway Pressure ("CPAP") machine to help with the problem. Dkt. # 16-2 at 4–6; Dkt. # 14-2 at 12. Plaintiff tried a CPAP but had stopped using it because it did not fit well. Dkt. # 16-1 at 5–6; Dkt. # 16-2 at 5–7.

After Captain Wilson suggested he see a doctor, plaintiff saw Dr. Nilesh Shah, an ear, nose, and throat specialist, in Seattle on May 2, 2012. Dkt. # 14-3; Dkt. # 16-3 at 4, 6. During this visit, Dr. Shah observed that plaintiff's tonsils were extremely enlarged and suspected that plaintiff was suffering from sleep apnea. Dkt. # 16-3 at 6. Dr. Shah did not provide an affirmative diagnosis of sleep apnea, but rather recommended that plaintiff undergo a sleep study to determine the severity of the problem. Dkt. # 16-3 at 6–7. Dr. Shah informed plaintiff that if the sleep study showed that plaintiff was indeed suffering from sleep apnea, he would recommend treatment in the form of a tonsillectomy and surgery to repair plaintiff's deviated septum. Dkt. # 16-3 at 8; Dkt. # 14-2 at 3.

On May 9, 2012, plaintiff self-administered a home sleep study. Dkt. # 14-4 at 5. The results suggested significant sleep apnea but were inconclusive given the short duration of the study. Dkt. # 16-3 at 14. Dr. Shah's office informed plaintiff that he would have to undergo a second sleep study. Dkt. # 14-4 at 6. On June 4, 2012, plaintiff self-administered a second sleep

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

study. Dkt. # 14-4 at 5.  Over the next few days, Dr. Shah's office attempted to contact plaintiff to discuss the results of the second sleep study,[1] but plaintiff did not receive these communications and did not contact Dr. Shah's office about the results of the sleep study. Dkt. # 14-4 at 4; Dkt. # 14-2 at 2, 3.

On June 5, 2012, plaintiff noted on his start-of-season health questionnaire that he needed surgery on his tonsils and palate. Dkt. # 14-8 at 1.  Plaintiff also testified that he told Captain Wilson that he would need to take off the next two fishing trips in order to have the tonsillectomy and palate surgery. Dkt. # 16-1 at 9–10, 18–19; Dkt. # 17, ¶ 4.  According to plaintiff, Captain Wilson told plaintiff that he was needed on the next two fishing trips because no other crew member was available to attend training on new technology that the vessel had recently installed, and that plaintiff would have to postpone his surgery. Dkt. # 16-1 at 9–10, 18–19; Dkt. # 17, ¶ 4.  Captain Wilson denies telling plaintiff to postpone his surgery. Dkt. # 20-3 at 2.

On June 12, 2012, plaintiff left Seattle for Alaska on the F/V Lilli Ann.  From then until July 4, 2012, plaintiff felt well. Dkt. # 16-1 at 13.  On July 4, however, plaintiff began to feel unwell.  At the time, the F/V Lilli Ann was traveling to Dutch Harbor, Alaska, to drop off another ill crew member. Dkt. # 14-2 at 6.  When the F/V Lilli Ann arrived in Dutch Harbor on July 5, 2012, crew members brought plaintiff to the Iliuliuk Health Clinic. Dkt. # 14-6 at 7.  Prior to his arrival at the clinic, plaintiff began to vomit, had trouble walking, and complained of a tingling sensation on the right side of his face. Dkt. # 14-2 at 7–8.  While at the clinic, plaintiff claimed that he could not feel cold sensations on the right side of his body, and the right side of his face began to droop. Dkt. # 14-2 at 8.  On the evening of July 5, plaintiff was transported via air ambulance to a hospital in Anchorage, where he was diagnosed with a stroke. Dkt. # 14-2 at

---

[1] The second sleep study indicated that plaintiff suffered from "very severe apnea." Dkt. # 16-3 at 7.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

9; Dkt. # 14-7 at 1, 4–5.

On July 6, 2015, plaintiff sued Coastal Villages Longline, LLC, and its parent company; F/V Lilli Ann, LLC; and the F/V Lilli Ann, in rem. Dkt. # 1. He filed an amended complaint on October 25, 2015. Dkt. # 4. Plaintiff claims that defendants breached the maritime duty to provide maintenance and cure by failing to take all reasonable steps to ensure that plaintiff received proper care and timely treatment for his sleep apnea. Defendants move for summary judgment, arguing that their maritime duty of maintenance and cure did not extend to requiring plaintiff to get medical care for a medical condition unrelated to his employment – and that even if it did, they did not breach that duty. Dkt. # 13.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact which would preclude the entry of judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate specific facts showing that there is a genuine issue of material fact for trial. Id. at 324. An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008). The Court will view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Mueller v. Auker, 576 F.3d 979, 991 (9th Cir. 2009).

**B.     Defendants' Maritime Duty to Provide Maintenance and Cure**

Plaintiff argues that, under the maritime duty to provide maintenance and cure,

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

defendants had a duty to ensure that he received medical care for his sleep apnea. Defendants ask the Court to clarify the standard of care imposed by the duty to provide maintenance and cure with regard to medical conditions unrelated to the crew member's employment.

Maritime law imposes on a ship and its owners the duty to provide vessel employees with maintenance and cure. <u>Cortes v. Baltimore Insular Lines</u>, 287 U.S. 367, 371 (1932), <u>superseded by statute on other grounds as recognized in</u> <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 33 (1990). The duty of maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship. <u>Atlantic Sounding Co., Inc. v. Townsend</u>, 557 U.S. 404, 407–08 (2009) (citing <u>Lewis v. Lewis & Clark Marine, Inc.</u>, 531 U.S. 438, 441)). The duty extends from the period when the seaman is incapacitated until he reaches "maximal medical recovery." <u>Vaughan v. Atkinson</u>, 369 U.S. 527, 531 (1962). Courts sitting in admiralty interpret this duty liberally, and doubts are resolved in favor of the seaman. <u>Id.</u> at 531–32. The duty to provide maintenance and cure is not "restricted to those cases where the seaman's employment is the cause of the injury or illness." <u>Calmar S.S. Corp. v. Taylor</u>, 303 U.S. 525, 528–29 (1938).

The duty to provide cure "encompasses not only the obligation to reimburse medical expenses actually incurred, but also to ensure the seaman receives the proper treatment and care." <u>Hedges v. Foss Maritime Co.</u>, No. C10-5046RBL, 2015 WL 3451347, at *4 (W.D. Wash. May 29, 2015) (citing <u>Boudreaux v. United States</u>, 280 F.3d 461, 468 (5th Cir. 2002)). The Supreme Court has observed that

> The duty to provide proper medical treatment and attendance for seamen falling ill or suffering injury in the service of the ship has been imposed upon the shipowners by all maritime nations. . . . Its measure depends upon the circumstances of each case – the seriousness of the injury or illness and the availability of aid. Although there may be no duty to the seaman to carry a physician, the circumstances may be such as to require reasonable measures to get him to one, as by turning back, putting in to the nearest port although not one of call, hailing a passing ship, or taking other measures of considerable cost in time and money.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

> Failure to furnish such care, even at the cost of a week's delay, has been held by this Court to be a basis for damages.

De Zon v. American President Lines, 318 U.S. 660, 667–68 (1943) (internal citations omitted). Accordingly, the standard of care entailed by the duty to provide maintenance and cure requires vessel owners to take measures that are reasonable under the circumstances to furnish medical care for sick or injured employees, even when the seaman's employment is not the cause of his sickness or injury.

Defendants contend that plaintiff seeks a determination that defendants must *require* sick or injured seamen to receive medical care. This misrepresents plaintiff's argument: plaintiff actually asserts that the standard of care required defendants "to take all reasonable steps to ensure that [plaintiff] received proper care and treatment." Dkt. # 4, ¶ 12. This recitation of the applicable standard of care is correct.

Plaintiff is incorrect, however, that the duty of maintenance and cure *necessarily* demanded that defendants investigate plaintiff's illness. Plaintiff cites Vaughan v. Atkinson, 369 U.S. 527, 528–29 (1962), for the proposition that ship owners have a duty to investigate their employees' illnesses, see Dkt. # 15 at 13–16. But Vaughan held that the ship owner's failure to investigate the seaman's claim for maintenance and cure – that is, the seaman's request that the ship owners compensate him for his medical bills – entitled the seaman to an award of attorney's fees for the efforts required to compel the ship owner to pay. See 369 U.S. at 530–31. Because Vaughan concerns a ship owner's obligation to investigate a claim for compensation, it does not support plaintiff's assertion that ship owners' duty of maintenance and cure obligates them to conduct a *medical* investigation into their employees' symptoms. On the facts of a given case, failure to inquire into a seaman's health may constitute a breach of the duty to ensure proper care, but the Court declines to impose an affirmative duty to investigate in all cases.

**C.     Breach of the Duty to Provide Maintenance and Cure**

Defendants ask the Court to find as a matter of law that they did not breach their duty to

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

provide maintenance and cure.  While the existence of a duty is a question of law, the question whether that duty was breached is generally reserved for the finder of fact.  Johnson v. State, 77 Wn. App. 934, 937 (1995).  In this case, a genuine issue of fact exists regarding whether Captain Wilson affirmatively told plaintiff to postpone his tonsillectomy and palate surgery:  plaintiff testifies that he told Captain Wilson that he would need to take off the next two fishing trips to make time for his surgery, and that Captain Wilson told him to postpone his surgery because he was needed on the next two trips.  Dkt. # 16-1 at 9–10, 18–19; Dkt. # 17, ¶ 4.  Meanwhile, Captain Wilson denies telling plaintiff to postpone his surgery, denies hearing that plaintiff's surgery was critical, and asserts more generally that he would never tell a crew member to postpone a critical surgery.  Dkt. # 20-3 at 2.  Given this fact issue, summary judgment on the issue of breach is not appropriate.

**CONCLUSION**

For all the foregoing reasons, defendants' motion for partial summary judgment (Dkt. # 13) is GRANTED in part and DENIED in part.

DATED this 22nd day of February, 2017.


*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7